IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**KATRINA FURR-HOFFMAN,**                 CASE NO. 3:21 CV 1823

    Plaintiff,

    v.                                                JUDGE JAMES R. KNEPP II

**PRECISION SUPPORT SERVICES, et al.,**

    Defendants.                 **MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

    This case arises out of Plaintiff Katrina Furr-Hoffman's claim that her former employer, Precision Support Services, committed gender discrimination and retaliation against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, and Ohio Revised Code § 4112.01 *et seq.* Plaintiff also named as Defendants brothers Darren Lapinski and Michael Lapinski. The matter now before the Court is Defendants' Motion for Summary Judgment. (Doc. 16). Plaintiff opposed (Doc. 17), and Defendants replied (Doc. 18).

    For the reasons set forth below, Defendants' Motion (Doc. 16) is granted.

### BACKGROUND

    Viewing the facts in the light most favorable to Plaintiff, the background of this case is as follows:

Parties Involved:

    Darren Lapinski is the owner of Precision Support Services ("Precision"). (Doc. 16-2, at 9). Darren's brother, Michael Lapinski, was a supervisor for Precision at the time of the events

underlying this action. (Plaintiff Depo., at 30)[1]; (Doc. 16-4, at 11). Precision provides personnel to automotive suppliers, most commonly at automotive plants. (Doc. 16-2, at 9). Precision provides sorting and containment inspection services as well as quality representatives. *Id.* at 9-10. Precision contracted to provide services at Dana Incorporated's facility. *Id.* at 10-11. The initial contract was relatively small in scale. *Id.* at 12. Another company, Benchmark, also provided services to Dana. *Id.* at 11-12. Dana approached Precision to replace Benchmark, and Precision agreed. *Id.* at 14.

Prior to her employment with Precision, Plaintiff worked as an assistant supervisor for Benchmark. (Plaintiff Depo., at 7-8). Plaintiff worked at the Dana plant while employed by Benchmark. *Id.* Plaintiff ran the "whole floor" while employed by Benchmark. *Id.* Her job responsibilities included the placement of employees, quality control, and production line oversight. *Id.* Prior to her work for Benchmark, Plaintiff worked for Johnson Controls as a quality technician. *Id.* at 9. She did not have a supervisory role in that position. *Id.* at 10-11.

Employment at Precision

Plaintiff and Michael were acquainted while she worked for Benchmark. *Id.* at 16-17. Darren and either Michael or another Precision employee invited Plaintiff to dinner, where they offered her a job with Precision. *Id.* at 17. Plaintiff accepted the offer from Precision and was hired as a second-shift supervisor. *Id.* at 18, 28-29. She started at Precision in November 2019. *Id.* at 8.

In her role as supervisor, Plaintiff's job responsibilities included: placing employees; managing call-offs; ensuring employees were properly trained; ensuring employees had safety uniforms; handling new work instructions; managing staff issues; ensuring employees were not on drugs or hiding in the bathrooms; and ensuring employee paperwork was accurate. *Id.* at 23.

---

1. Plaintiff's deposition in located at ECF Doc. 16-3.

<u>Workplace Incidents</u>

At the onset of the COVID pandemic, Precision ceased operations from March 18, 2020 to May 20, 2020. (Doc. 16-4, at 62). Michael recalled that Plaintiff's performance prior to COVID was "fine". *Id.* at 59. However, after the plant reopened, "she let [him] down about three or four times." *Id.* Sometime after the COVID shutdown, Plaintiff was disciplined when a "young lady failed a part, [and] there was an escape[.]" (Plaintiff Depo., at 35-36). Michael testified that prior to August 1, 2020, the line Plaintiff supervised "missed three hub nuts in one month" and that corporate raised concerns to him about Plaintiff's performance. (Doc. 16-4, at 63-64).

The workplace environment reached a boiling point on August 1, 2020. *Id.* at 64. An employee under Plaintiff's supervision, Albert Taylor, scheduled paid-time-off ("PTO") for August 1, 2020, which Plaintiff approved. (Plaintiff Depo., at 49, 54). Another employee, Antonio Wilborn, called off. *Id.* Plaintiff assigned Ashan Chandler to work the line. *Id.* at 50. Precision had recently instituted a new policy for PTO requests which required employees to request a date by signing their name in a notebook, and if there was coverage on the line for that date, the request would be approved by their supervisor. *Id.* at 52. Because Taylor was out on PTO and Wilborn called off unexpectedly, there was a gap in coverage. *Id.* at 53.

Michael questioned why Chandler was on the line and expressed frustration that Plaintiff allowed Taylor to schedule time off because he was off for three days the week prior. *Id.* at 50; Doc. 16-4, at 64. What happened next is contested; Plaintiff contends Michael screamed in her face in front of plant floor staff, and then, as she turned to walk away to retrieve the PTO notebook, Michael grabbed her shoulder and continued to yell. (Plaintiff Depo., at 55, 60). Michael contends he never put his hands on Plaintiff. (Doc. 16-4, at 63). He admits he yelled at her and that he "was at level 12". *Id.* at 65. Michael states he then said Taylor was fired. *Id.* at 66. Michael then made

3

Plaintiff work on the line for the rest of the shift. *Id.* Michael also testified he assigned a line employee, who was normally Plaintiff's subordinate, to watch Plaintiff for the rest of the shift and ensure she worked on the line. *Id.* Michael states Plaintiff was upset because employees laughed at her. *Id.* Michael apologized about a week later for "the level of [his] voice." *Id.* at 67.

Plaintiff reported the incident to Darren and a Dana quality supervisor. (Plaintiff Depo., at 70). She told Darren that Michael does not like to work with women, is disrespectful, and that something needed to be done. *Id.* at 76. At some point after the August 1, 2020, incident, Darren for the first time notified Plaintiff he had concerns about her performance, specifically, her absence during large parts of her shift. *Id.* at 85-86. Plaintiff refuted Darren's characterization and told him to check the cameras. *Id.* at 88.

On August 8, 2020, Plaintiff called in fifteen minutes before her shift began and informed Michael she was tired, did not feel well, and would be fifteen minutes late. *Id.* at 99-100. Michael told Plaintiff to take the day off. *Id.* at 99. Plaintiff decided to still go into work, and upon arrival, Michael told her to go home. *Id*. at 100. After she left the Dana facility, Plaintiff encountered a man who worked at the Dana plant that was having car troubles. *Id.* Plaintiff gave him a ride to the Dana plant. *Id.* at 100-01. After she picked up the man, Michael pulled up next to her in his vehicle. *Id.* at 100. Plaintiff believes she was driving a Jeep Wrangler rental car, and stated she was playing loud music in the vehicle. *Id.* at 101. Darren fired Plaintiff the next day. (Doc. 16-3, at 42). Adrian Weaver, a male, replaced Plaintiff as shift supervisor. (Doc. 16-4, at 70).

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record

4

in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## DISCUSSION

Plaintiff alleges Defendants committed gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, and Ohio Revised Code § 4112.01 *et seq*. For the reasons discussed below, the Court finds Defendants are entitled to summary judgment on all claims.

<u>Discrimination</u>

In Counts I and II of her Complaint, Plaintiff brings claims of gender discrimination under both Title VII and Ohio Revised Code § 4112, *et seq.* "Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

5

because of such individual's race, color, religion, sex, or national origin.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e-2(a)(1)).

When a plaintiff does not put forth direct evidence of discrimination, this Court applies the burden-shifting analysis established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and later modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). This framework places the initial burden on Plaintiff to establish her prima facie case. *Burdine*, 450 U.S. at 252-53 (citing *McDonnell Douglas*, 411 U.S. at 802). To satisfy this burden, the plaintiff must show "(1) [she] was a member of a protected class; (2) [she] suffered an adverse employment action; (3) [she] was qualified for the position; and (4) [she] was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (internal citations and quotations omitted). If the plaintiff can establish a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action. *Burdine*, 450 U.S. at 252-53 (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant articulates such a reason, the burden shifts back to the plaintiff to demonstrate the proffered reason was a mere pretext for discrimination. *Id.* at 253. "[F]ederal case law governing Title VII actions is generally applicable to cases involving alleged violations of Chapter 4112." *Id.* (citing *Williams v. Ford Motor Co.*, 187 F.3d 533, 538 (6th Cir. 1999)). Thus, all of Plaintiff's discrimination claims are properly analyzed under the Title VII framework.

Because Plaintiff has not provided any direct evidence of discrimination, this case must be analyzed under the burden-shifting analysis. *See* Doc. 17, at 6-7.

*Prima Facie Case*

Defendants contend Plaintiff is unable to meet the second or forth prong of her prima facie case. (Doc. 16, at 16). Specifically, Defendants argue Plaintiff has not produced evidence she suffered an adverse action or that she was treated differently than similarly situated employees outside the protected class. *Id.*

Defendants concede Plaintiff is a member of a protected class and, for purposes of the summary judgment motion, "[Precision] does not challenge Furr-Hoffman's qualifications for the position she held at PSS." *Id.* However, in reply, Defendants argue Plaintiff failed to produce sufficient evidence that she was qualified for the position. (Doc. 18, at 3). "It is well established . . . that courts will not normally consider issues raised for the first time in Reply Briefs, as it deprives the non-movant of a full and fair opportunity to respond." *Great Lakes Packers v. P.K. Produce*, 542 F. Supp. 3d 685, 702 (N.D. Ohio 2021). Defendants expressly disavowed any challenge to this prong of Plaintiff's prima facie case in their underlying motion. Accordingly, the Court finds the qualification argument waived, and will not consider it herein.

*Adverse Employment Action*

Defendants argue neither instance of discipline identified by Plaintiff – a conversation related to the "escape" or the August 1, 2020, incident wherein Michael yelled and grabbed Plaintiff's shoulder – constitutes an adverse employment action. (Doc. 16, at 16). Plaintiff responds that her termination satisfies this prong. (Doc. 17, at 12-13).

"An adverse employment action is a materially adverse change in the terms of employment. Termination, decrease in wage or salary, change in title, diminished material responsibilities, or a material loss of benefits are all examples of a materially adverse change." *Lee v. Cleveland Clinic Found.*, 676 F. App'x 488, 494 (6th Cir. 2017) (internal citations and quotations omitted).

7

Plaintiff's termination is not a matter of dispute. *See* Plaintiff Depo., at 54; Doc. 16-2 at 42. Because termination of employment constitutes an adverse employment action, this prong of Plaintiff's prima facie case is satisfied.

*Non-Protected Employees*

Defendants argue they are entitled to summary judgment because of the "lack of comparators who were more favorably treated." (Doc. 16, at 16). They contend "Plaintiff has entirely failed to identify a single similarly situated male comparator, nor has she produced any evidence that any male employee was treated differently under similar circumstances for the same type of conduct." (Doc. 18, at 2). Plaintiff states the record contains multiple examples where Defendants treated her less favorably than her male coworkers and that she presented evidence that shows she was replaced with a person outside of her protected class. (Doc. 17, at 13).

A plaintiff can satisfy the final prong of her prima facie case in one of two ways: by showing she (1) was replaced by someone outside of the protected class; or (2) was treated differently than similarly situated, non-protected employees. *Wright*, 455 F.3d at 707. In *Shazor v. Professional Transit Management, Inc.*, the Sixth Circuit explained the "replacement method works especially well when a plaintiff is terminated and the employer hires a single replacement to do the same job", whereas the similarly situated method "is intended to provide plaintiffs with an alternative way of establishing the final element of their prima facie case . . . [and] is especially useful in cases where the plaintiff is not terminated, is not replaced, or is not replaced with a single person". 744 F.3d 948, 958-59 (6th Cir. 2014).

Michael testified Plaintiff was replaced by Adrian Weaver, a male. (Doc. 16-4, at 69-70). That Plaintiff was replaced by someone outside of her protected class is sufficient to satisfy this prong of her prima facie case, for purposes of summary judgment, under the replacement method.

8

*Shazor*, 744 F.3d at 959. Therefore, Plaintiff is not required to provide similarly situated comparators who were treated more favorably.

Plaintiff has provided sufficient evidence to satisfy her prima facie case for purposes of summary judgment.

*Legitimate Nondiscriminatory Reason*

"If a plaintiff establishes a prima facie case of gender discrimination, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for its actions." *Reed v. Metro. Gov't of Nashville & Davidson Cnty.*, 286 F. App'x 251, 254 (6th Cir. 2008). "In particular, the defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Gielda v. Bangor Twp. Schs*, 505 F. App'x 550, 555 (6th Cir. 2012) (internal citations and quotations omitted).

Defendants provide evidence that Plaintiff was terminated because she called off fifteen minutes before her shift began, citing unwellness, only to be seen a short time later driving in a convertible with loud music. (Doc. 18, at 3-4); (Plaintiff Depo., at 100-01). Defendants bolster this reason with evidence Plaintiff was counseled to improve her performance and attendance issues one week prior. (Plaintiff Depo., at 90-91).

Because Defendants articulated a legitimate nondiscriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to demonstrate the proffered reason was a mere pretext for discrimination.

*Pretext for Discrimination*

"A plaintiff may demonstrate that an employer's explanation is not credible by demonstrating that the proffered reasons (1) had no basis in fact, (2) did not actually motivate the

9

employer's action, or (3) were insufficient to motivate the employer's action." *Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 486 (6th Cir. 2010). "The plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008) (internal quotations omitted). Additionally, "a reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original). "A court should grant summary judgment in discrimination cases when the plaintiff 'only created a weak issue of fact as to whether the defendant's reason was untrue and there is ample evidence to support the employer's position.'" *Gielda*, 505 F. App'x at 556 (quoting *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 504 (6th Cir. 2007)).

Plaintiff argues Defendants' proffered reason did not actually motivate the action and was insufficient to motivate termination. (Doc. 17, at 15). Under the "did not motivate" prong, "Plaintiff can establish pretext by showing that it 'was more likely than not' that Defendants terminated Plaintiff based on an illegal motivation." *Abdulnour*, 502 F.3d at 503. "Put another way, Plaintiff must show that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup." *Id.* (internal quotations omitted). "To succeed [under the insufficient to motivate prong], [Plaintiff] must provide evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which [Defendant] contends motivated its discipline of [Plaintiff]." *Miles v. South Cent. Human Res. Agency, Inc.*, 946 F.3d 883, 893 (6th Cir. 2020) (internal quotations omitted).

10

Plaintiff argues Defendants' proffered nondiscriminatory reason was not the real motivation behind her termination. (Doc. 17, at 15). Plaintiff takes issue with Darren's characterization that she "called off" fifteen minutes prior to her shift on August 8, 2020, when she actually called to inform Michael she would be late, came in to cover at least part of her shift, and was then instructed by Michael to go home. *Id.* Plaintiff also contends Defendants' citation of the encounter on the road (where Michael observed Plaintiff in her car with loud music playing a short time after she left the Dana plant) is pretextual. *Id.* at 16. Plaintiff contends Defendants' position that she lied about not feeling well "is simply non-sense" because a person who feels unwell can listen to loud music. *Id.* Plaintiff also argues:

> Accordingly, coupled with the temporal proximity of the August 1, 2020 incident between M. Lapinski and Furr-Hoffman, it is more likely that the discrimination Furr-Hoffman experienced at the hands of Defendants is the real reason for her termination rather than Defendants' purported reason. At the very least, there is a genuine issue of fact that the traffic stop encounter was insufficient to warrant Furr-Hoffman's termination, as she was not terminated by the attendance issue itself, but rather Defendants' issue with Furr-Hoffman's driving while listening to music.

*Id.* at 16-17.

Plaintiff's argument falls short under *St. Mary's Honor Center*, and in some ways is self-defeating. Under *St. Mary's Honor Center*, Plaintiff is required to show both that Defendant's purported reason was false *and* that the real reason was discrimination. 509 U.S. at 515. As an initial matter, Plaintiff has not shown Defendants' purported reason was false; Plaintiff admits she called in fifteen minutes before her shift began to notify Michael she would be late. (Plaintiff Depo., at 99-100). In light most favorable to Plaintiff, "[she] wasn't that late" on August 8, 2020. *Id.* at 100. However, Plaintiff has not shown the underlying basis – that is, her notifying Michael shortly before the shift began that she felt unwell and would miss at least part of her shift – to be false. Aside from temporal proximity to the August 1, 2020, workplace incident, Plaintiff offers

11

no circumstantial evidence which suggests pretext. *Alexander v. Univ. of Memphis*, 2021 U.S. App. LEXIS 16949, *19 (6th Cir.) ("[T]emporal proximity alone cannot prove pretext."). Moreover, Plaintiff argues "Defendants' issue with Furr-Hoffman's driving while listening to music" was a motivator of her termination; this argument does not show discrimination was the real reason for her termination as required under *St. Mary's Honor Center*.

Last, Plaintiff conclusorily contends the above-stated reasons are insufficient to warrant her termination. (Doc. 17, at 16-17). However, Plaintiff does not provide any supporting evidence as required under *Miles*, 946 F.3d at 893. Plaintiff has thus not provided this Court with sufficient evidence to gauge whether the provided reasons were insufficient to motivate her termination.

Because Plaintiff has "only created a weak issue of fact as to whether the defendant[s'] reason was untrue[,]" *Gielda*, 505 F. App'x at 556, she has not met her burden under *McDonnell Douglas*, and Defendants are thereby entitled to judgment on the claims of discrimination.

Retaliation

Plaintiff alleges retaliation in Counts III and IV of her Complaint. (Doc. 1, at 11-12). These claims are brought under Title VII and Ohio Revised Code § 4112.02(I). *Id.* Plaintiff argues Defendants retaliated against her while she was engaged in the protected activity of opposing gender discrimination. (Doc. 17, at 18). "Title VII discrimination and retaliation claims based upon circumstantial evidence are analyzed in accordance with the burden-shifting framework of [*McDonnell Douglas Corp.*, 411 U.S. 792.]" *Jones v. McCarthy*, 2021 U.S. App. LEXIS 729, *2 (6th Cir.).

"Under *McDonnell Douglas*, a plaintiff must present a prima facie case of retaliation; if the plaintiff does that, the employer must identify a legitimate, nondiscriminatory reason for the adverse employment action; and if the employer does that, the plaintiff must prove that the

employer's reason served as a pretext for retaliation." *Zarza v. Bd. of Regents of the Univ. of Michigan*, 2023 U.S. App. LEXIS 11114, *8 (6th Cir.) (internal quotations omitted). Plaintiff does not provide direct evidence of retaliation, and therefore, she must utilize the *McDonnell Douglas* burden shifting analysis. *See* Doc. 17, at 17.

Assuming without deciding that Plaintiff can support a prima facie case for retaliation, that claim fails at the pretext stage. As discussed above, Defendants articulated a legitimate and lawful reason for terminating Plaintiff's employment; that being, Plaintiff called off fifteen minutes before her shift began citing unwellness only to be seen a short time later driving in a convertible with loud music. (Doc. 18, at 3-4); (Plaintiff Depo., at 100-01).

In her opposition brief, Plaintiff argues "the same pretext analysis described for Furr-Hoffman's discrimination claim applies to her retaliation claim" and relies on the same evidence and arguments she presented to show pretext in relation to her discrimination claims. (Doc. 17, at 22-23).

Accordingly, Defendants are entitled to judgment on Plaintiff's retaliation claims because she failed to show Defendants' proffered reason did not actually motivate the action or was insufficient to motivate termination.

### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Summary Judgment (Doc. 16) be, and the same hereby is, GRANTED.

    s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE